UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| W.R. HUFF ASSET MANAGEMENT CO., LLC | ]<br>]<br>] |
| Plaintiff, | ]<br>] |
| v. | ]  CIVIL ACTION NO.<br>]  CV-00-BE-1872-S |
| KOHLBERG KRAVIS ROBERTS & CO., L.P., a Delaware limited parternship, et al., | ]<br>]<br>]<br>] |
| Defendants. | ] |

## MEMORANDUM OPINION

This case is before the court on Plaintiff W.R. Huff Asset Management Co., L.L.C's ("Huff") Renewed Motion to Remand (Doc. 25). The matter has been fully and ably briefed by both sides, and counsel presented oral arguments to the court on September 4, 2002. The issue presented by Huff's motion is whether the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), [Pub. L. No. 105-353, 112 Stat. 3227 (1998), codified at 15 U.S.C. §§ 77p (amending Securities Act of 1933) and 78bb (amending Securities Exchange Act of 1934) (West 2002)] applies retroactively to pre-enactment conduct. Having considered the briefs, evidentiary submissions, and arguments of counsel, the court has determined that Huff's Motion is due to be DENIED for the reasons discussed in this opinion.

I. Procedural History

On August 10, 1995, Bruno's, Inc. issued $400 million of high yield subordinated notes ("Notes") in anticipation of its August 1995 leveraged recapitalization. Plaintiff Huff is an investment management company that purchased $290 million of these Notes on behalf of its

customers. Defendants are numerous entities and individuals that participated in Bruno's recapitalization. On February 2, 1998, Bruno's and its subsidiaries filed petitions for relief under Chapter 11 of the Bankruptcy Code in the District of Delaware. *See In re: PWS Holding Corp.,* Del. Case No. 98-212, 1999 WL 33510165 (Bankr. D. Del. Dec. 30, 1999), *aff'd*, 228 F.3d 224 (3d Cir. 2000). On August 4, 1999, Huff filed this action in Alabama state court for itself and on behalf of certain of its unnamed purchaser-clients alleging claims for fraudulent transfer and breach of duty against Defendants. On August 24, 1999, Defendants removed the case to the United States Bankruptcy Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1452(a) because this case was related to Bruno's bankruptcy proceeding in the District of Delaware (Doc. 1). On September 1, 1999, Huff filed a motion in the Alabama Bankruptcy Court to remand the action to state court. However, the Bankruptcy Court in Alabama stayed this motion with the consent of the parties pending confirmation of Bruno's plan of reorganization by the Delaware court. The Bankruptcy Court confirmed this plan on December 30, 1999.

On April 24, 2000, plaintiff's sought leave from the Bankruptcy Court in Alabama to amend the complaint in this case, asserting claims under Alabama state law for (1) fraudulent suppression; (2) fraudulent and reckless misrepresentation; (3) fraudulent and reckless deceit; (4) violations of the Alabama Securities Act; (5) negligent misrepresentation; (6) civil conspiracy; and (7) aiding and abetting. The Bankruptcy Court granted Huff leave to amend on May 24, 2000. On January 4, 2001, the Bankruptcy Court withdrew the bankruptcy reference of this action and transferred this case to the District Court for the Northern District of Alabama. On November 14, 2001, the case was reassigned to this court. On July 1, 2002, Huff filed a Renewed Motion for Remand (Doc. 25). After extensive briefing by counsel on this issue, the court held a hearing on September 4, 2002.

## II. Discussion

Although Defendants removed this case to the Bankruptcy Court because Huff originally asserted fraudulent transfer claims allegedly related to Bruno's bankruptcy proceeding, that issue of fraudulent transfer is no longer before this court. The Delaware District Court extinguished Huff's original claims during Bruno's bankruptcy proceeding. *See In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000). The only claims before this court, and thus the only claims Huff seeks to remand, are the numerous state law claims alleged by Huff in its Second Amended Complaint filed on April 24, 2000. (Doc. 52 in Bk. Proceeding). Therefore, the issue before this court is not whether Huff's claims were removable based on their relationship to a bankruptcy proceeding; rather, the issue before this court is whether SLUSA preempts Huff's state law claims. If preempted, then remand would be improper.

Defendants contend that this court has jurisdiction over Huff's state law claims pursuant to SLUSA. SLUSA provides for the mandatory removal and dismissal[1] of all private actions

---

[1] SLUSA provides the following:
(f) LIMITATIONS ON REMEDIES.--
(1) CLASS ACTION LIMITATIONS.--No covered class action based upon the statutory or common law of any state or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
(2) REMOVAL OF COVERED CLASS ACTIONS.--Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. § 78bb(f)(1)(A), (B), & (2)

grounded in state law that qualify as "covered class actions."[2] *See, e.g., Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1341 (11th Cir. 2002); *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, MDL -1146, No. H-02-1150 (S.D. Tex. Aug. 16, 2002).

Huff correctly concedes that its action is a "covered class action" under § 77p(f)(2)(A)(i)(II) because Huff seeks to recover damages on a representative basis for itself and its clients. However, Huff argues that SLUSA is inapplicable to this case because SLUSA does not preempt claims based on conduct that occurred before SLUSA's enactment even if those claims were filed after SLUSA's enactment, i.e., SLUSA does not apply retroactively. Therefore, Huff contends that the removal was defective because it resulted from an

---

[2] A "covered class action" is defined under SLUSA as:
(i) any single lawsuit in which–
(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominated over any question affecting only individual persons or members or
(II) one or more named parties seek to recover damages <u>on a representative basis on behalf of themselves and other unnamed parties similarly situated,</u> and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or
(ii) any group of lawsuits filed in or pending in the same court involving common questions of law or fact, in which–
(I) damages are sought on behalf of more than 50 persons; and
(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 78bb(f)(5)(B) (emphasis added).

impermissible retroactive application of SLUSA to preempt its state law claims. In making this argument, Huff points out that all of Defendants' acts and omissions that form the basis of claimed liability occurred prior to SLUSA's enactment on November 3, 1998. However, Huff did not file the suit in Alabama state court until August 4, 1999, almost nine months after the enactment. Additionally, Huff filed the Second Amended Complaint that asserted the claims at issue before the court on April 24, 2000, over seventeen months after SLUSA's enactment. Thus, the specific question before this court is whether SLUSA retroactively applies to actions based on pre-enactment conduct that were asserted subsequent to enactment.

### III. Applicable Law

#### A. The *Landgraf* Framework

The United States Supreme Court set forth the framework for addressing retroactivity of legislation in *Landgraf v. USI Film Prod.*, 511 U.S. 244 (1994).[3] In *Landgraf*, the Supreme Court addressed the issue of whether an amendment to the Fair Claims Act should apply retroactively to a case based on pre-enactment conduct already pending when Congress enacted the amendment. In *Hughes Aircraft v. United States ex rel. Schumer*, 520 U.S. 939, 941-45 (1997), the Supreme Court applied the *Landgraf* analysis to a suit filed after the enactment of an amendment to the Fair Claims Act when the suit was based on pre-enactment conduct. Because this case is procedurally similar to *Hughes Aircraft*, this court applies the *Landgraf* analysis to resolve the retroactivity issue before it. See *W.R. Huff Asset Managment Co. v. BT Securities Corp.*, 190 F. Supp. 2d 1272 (N.D. Ala. 2001) (applying *Landgraf* analysis to resolve same issue

---

[3]For a complete discussion of *Landgraf* and its progeny, see *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, MDL -1146, No. H-02-1150, slip. op. at 4-10 (S.D. Tex. Aug. 16, 2002).

presented in this case); *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, MDL - 1146, No. H-02-1150, slip. op. at 4 (S.D. Tex. Aug. 16, 2002) (same).

The *Landgraf* Court recognized the traditional presumption against retroactive application because "considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf*, 511 U.S. at 265. In addition, the *Landgraf* Court adopted a two-part retroactivity analysis:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i. e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. at 280.

Following this two-part framework, the first question to be answered is whether Congress expressly prescribed SLUSA's temporal reach. *See W.R. Huff Asset Managment Co. v. BT Securities Corp.*, 190 F. Supp. 2d 1272, 1276 (N.D. Ala. 2001) (citing *Martin v. Hadix*, 527 U.S. 343 (1998) (citing *Landgraf*, 511 U.S. at 280)). The "Applicability" note appended to 15 U.S.C. § 77p is the only indication of the temporal reach of SLUSA: "The amendments made by this section shall not affect or apply to any action commenced before and pending on the date of enactment of this Act." § 101(c), 112 Stat. at 3233. This language certainly qualifies as an "express command" that prevents application of SLUSA to cases pending on the date of SLUSA's enactment. However, this language does not contain an "unambiguous directive"

regarding SLUSA's temporal reach to causes of action accrued before SLUSA's passage but filed after its enactment. *Landgraf*, 511 U.S. at 264. Because § 101(c) fails to expressly proscribe the temporal reach of SLUSA under step-one of the *Landgraf* framework, this court now determines whether SLUSA's application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280.

**B. Retroactivity and SLUSA**

Huff argues that the application of SLUSA to this case is impermissible because it would impair rights Huff possessed at the time it purchased the Notes. First, Huff contends that SLUSA's mandatory removal and dismissal of state law securities fraud claims impairs Huff's right to bring those claims on its own behalf and on behalf of its clients. Second, Huff argues that SLUSA has an improper retroactive effect because it shortens the statute of limitations applicable to Huff's claims. Finally, Huff argues that because SLUSA defines a "covered class action" as a lawsuit in which one or more named parties seek to recover damages on a representative basis, any lawsuit Huff filed would be subject to SLUSA's mandatory removal and dismissal provisions. In essence, Huff contends that SLUSA impairs its substantive rights to bring state law claims against Defendants, and, as a result, SLUSA cannot retroactively apply to this lawsuit.

In making these arguments, Huff urges this court to follow a decision of first impression by Judge Acker in *W.R. Huff Asset Management Co. v. BT Securities Corp.*, 190 F. Supp. 2d 1273 (N.D. Ala. 2001). The facts in *BT Securities* mirror those before this court as both cases arise out of the same set of events. Huff, the same plaintiff in this action, sued BT Securities

alleging virtually the same claims asserted against Defendants in the Second Amended Complaint in this case. Judge Acker directly addressed the issue of SLUSA's retroactivity and held, under step two of *Landgraf*, that SLUSA does not apply to actions based on pre-enactment conduct but filed following enactment. 190 F. Supp. 2d at 1276-77.

Judge Acker first found that retroactive application of SLUSA would "deny Huff and the individuals on whose behalf it purports to act the efficient resolution of claims naturally suited to group action and will expose them to the shortcomings inherent in separate actions. Such exposure runs counter to the concepts of fair notice, reasonable reliance, and settled expectations and would attach new legal consequences to completed events that form the factual basis for Huff's complaint." 190 F. Supp. 2d. at 1280. Judge Acker also noted that even if Huff re-pled its claims as a class action under federal law in accordance with SLUSA, "many of the claims would be time barred" by the one-year statute of limitations of wrongdoing and the three-year period of repose for claims under § 10(b) of the Securities Exchange Act of 1934. 190 F. Supp. 2d at 1281. Judge Acker stated that "the practical effect of a retrospective application of SLUSA would be to trim down Huff's case to a virtual nothing." 190 F. Supp. 2d at 1281. He reasoned that such a result would necessarily impinge upon Huff's rights to bring these claims at the time of the wrongdoing, and that "[t]he reasonable expectations [Huff] had at the time of the allegedly actionable conduct cannot be reconciled with such a relinquishment of a substantive right." 190 F. Supp. 2d at 1281.

An additional factor in Judge Acker's decision was his finding that the "principles of federalism and comity which recognize that federal courts are courts of limited jurisdiction" militate against applying SLUSA to pre-enactment conduct. 190 F. Supp. 2d at 1281. Judge

Acker concluded that "[w]hen Congress is ambiguous on the question of retroactivity of a preemptive federal statute, and when removability depends upon a retroactive application of that statute, the ambiguity must be resolved against removability and thus against retroactivity." 190 F. Supp. 2d at 1281.

Defendants argue that Judge Acker's holding in *BT Securities* is erroneous and urge this court to follow instead a recent decision by the United States District Court for the Southern District of Texas, *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, MDL -1146, No. H-02-1150 (S.D. Tex. Aug. 16, 2002). In *Enron*, the plaintiff brought a class action in Texas state court on behalf of himself and all purchasers of publicly traded Enron securities from April 11, 1997 through October 15, 1998, against Enron and other individual defendants alleging state securities fraud claims, fraudulent misrepresentation, negligent misrepresentation, and conspiracy. Defendants removed the case pursuant to §§ 77p and 78bb of SLUSA as a "covered class action" alleging state law claims that are actionable under federal securities law. Slip Op. at 3. The plaintiff, relying on *W.R. Huff Asset Management Co. v. BT Securities Corp.*, 190 F. Supp. 2d 1272 (N.D. Ala. 2001), argued that the removal was improper because it was based on an "impermissible retroactive application of SLUSA to preempt his state law claims." Slip Op. at 3-4. The conduct giving rise to plaintiff's claims occurred prior to SLUSA's enactment date, but the suit was not filed until more than three years after the enactment. Slip Op. at 4.

In *Enron*, Judge Harmon became the second district court to directly address the issue of SLUSA's retroactivity. After carefully analyzing *BT Securities*, Judge Harmon held that because "SLUSA exemplifies a rule of procedure that regulates secondary rather than primary conduct," the retroactive application of SLUSA to pre-enactment conduct does not impair plaintiffs' rights.

Slip. Op. at 22. Like Judge Acker, Judge Harmon found that SLUSA "does not explicitly and clearly indicate its temporal scope." Slip Op. at 19. Turning to step-two of the *Landgraf* analysis, however, Judge Harmon "disagree[d] with Judge Acker's conclusion that SLUSA may not be retroactively applied." Slip Op. at 19.

Judge Harmon found that the retroactive application of SLUSA to plaintiff's class claims did not impair plaintiff's rights to pursue his claims. Slip Op. at 20-22. Judge Harmon dismissed plaintiff's contention that SLUSA deprived him of his right to bring a class action in Texas state court, finding that "[t]here is no absolute right to bring a suit as a class action." Slip Op. at 19. Harmon also noted that SLUSA did not preclude plaintiff from pursuing his claims individually in state court. Slip Op. at 21. An additional consideration for Judge Harmon was that he found "no manifest injustice in the legal effect of SLUSA in denying [plaintiff] the opportunity at this point to pursue his claims on a class basis in federal court because the federal limitations period is shorter than that applicable to Texas' fraud claims." Slip Op. at 21. Because SLUSA's enactment put plaintiff on notice that Congress eliminated state law securities class actions, plaintiff could have filed a timely class action in federal court under federal law instead of waiting until the federal limitations period had run. Slip Op. at 22.

Finally, Judge Harmon concluded that because SLUSA's effect is largely procedural, regulating plaintiff's filing and prosecution of litigation rather than defendant's allegedly unlawful conduct, the application of SLUSA did not affect plaintiff's substantive rights:

> What SLUSA eliminates is a state-court forum for class actions arising from securities violations under state law pursuant to Congress' right, under the Supremacy Clause, to impose uniform and stringent pleading standards in such suits in an effort to eliminate abusive litigation and to prevent plaintiffs from evading the protections of federal law.

Slip Op. at 22. Because the application of SLUSA to plaintiff's claims did not deny plaintiff nor any of the prospective class members their substantive rights to pursue their claims as individuals in state court, Judge Harmon applied "the law in effect at the time [plaintiff] filed his suit, i.e., SLUSA." Slip Op. at 23.

## IV. ANALYSIS

This court follows Judge Harmon's holding in *Enron*, MDL -1146, No. H-02-1150 (S.D. Tex. Aug. 16, 2002). The application of SLUSA to the case at hand does not impair Huff's substantive rights to pursue its causes of action against Defendants. Huff argues that, because SLUSA requires this court to dismiss Huff's case, it necessarily impinges upon Huff's right to prosecute its claims. Furthermore, Huff asserts that SLUSA impairs its rights by eliminating its state law claims. However, Huff mischaracterizes SLUSA's effect on its claims. SLUSA's application does not eliminate Huff's state law claims – SLUSA merely prevents Huff from litigating its case in a particular procedural form. SLUSA prevents Huff from bringing a "covered class action" alleging state law securities claims, but it does not completely preclude Huff from bringing its claims in federal court under federal law.

This court recognizes, however, that the application of SLUSA to this case has a greater effect than the application of SLUSA had in *Enron*. Unlike the plaintiff in *Enron*, Huff did not file this lawsuit as a state-law class action. As previously discussed, Huff asserted individual state law claims against Defendants. The application of SLUSA in this case converts Huff's individual state law claims into a covered class action because Huff sued in a representative capacity on behalf of its customers under § 77(p)(f)(2)(A) of SLUSA. Therefore, unlike the plaintiff in *Enron*, Huff does not have the option of pursuing its claims individually in state court.

However, this factual distinction does not preclude the applicability of the reasoning in *Enron* to the case at hand.

Despite Huff's assertion that it has a right to bring individual state-law claims against Defendants, a well settled principle holds that "[n]o one has a vested right in any given mode of procedure." *Crane v. Hahlo*, 258 U.S. 142, 147 (1922). SLUSA does not impair Huff's substantive rights to pursue its claims: SLUSA merely requires that Huff proceed in federal court under federal law if Huff and its customers elect to pursue their claims in a form that qualifies as a covered class action.

Furthermore, when Congress enacted SLUSA on November 3, 1998, it gave notice to Huff that representative state law claims were eliminated. At that time Huff could have filed an action in federal court under federal law, but chose to wait until August 4, 1999, to assert state law fraudulent transfer claims against Defendants. Huff had another opportunity to allege federal claims against Defendants in the Second Amended Complaint, filed on April 24, 2000, but instead carefully alleged state-law claims in an effort to avoid federal jurisdiction. Huff made a distinct tactical choice in attempting to bring state law claims against Defendants. Any consequences that follow from such a choice are attributable to Huff's desire to invoke a particular mode of procedure and do not constitute an abrogation of Huff's substantive rights.

The application of SLUSA's statute of limitations also fails to substantively impair Huff's rights. SLUSA's statute of limitations requires claims to be brought within one year from "discovery," with an absolute three year period of repose. *See Lampf, Pleva, Lipkind, Prupis & Pettigrow v. Gilbertson*, 501 U.S. 350, 364 (1991). Under Alabama law, securities fraud claims must be brought within two years of "discovery" with no absolute period of repose. Ala. Code

§§ 6-2-3, 8-6-19(f). Huff argues that the application of SLUSA's shorter statute of limitations bars some of its causes of action and therefore impacts its substantive rights to bring these causes of action. This reasoning was an important factor for Judge Acker in *BT Securities*, when he found that even if Huff re-filed its claims under federal law, the applicable statute of limitations would bar many of Huff's claims. *BT Securities*, 190 F. Supp. 2d at 1281.

Even if this court assumes that some of Huff's claims would be time-barred under the statute of limitations governing federal securities fraud claims, the imposition of a new statute of limitations to subsequently filed actions does not give rise to retroactivity concerns. In *Vernon v. Cassadaga Valley Central School District*, 49 F.3d 886 (2d Cir. 1995), the Second Circuit Court of Appeals held that the application of an amended, shorter statute of limitations to bar a cause of action that accrued before the passage of the amendments was consistent with the Supreme Court's decision in *Landgraf*:

> As courts presented with this issue have recognized, applying a new or amended statute of limitations to bar a cause of action filed after its enactment, but arising out of events that predate its enactment, generally is not a retroactive application of the statute. In such a case, the statute is applied to conduct that occurs after the statute's enactment – plaintiff's filing of the complaint – not the defendant's allegedly unlawful acts. . . . Where a new rule alters substantive rights, to apply the new rule prospectively means to apply it to claims based on conduct occurring from that time forward. However, where as here, the new rule announces a period of limitations, the conduct to which it refers is the plaintiff's conduct relating to the filing of the claim and not the defendant's conduct giving rise to the claim. *Retroactivity concerns, therefore, generally do not bar application of a changed statute of limitations to a complaint filed after the amendment.*

*Vernon*, 49 F.3d at 889-90 (citations and internal quotation marks omitted) (emphasis added).[4]

---

[4]While the *Vernon* court stated that its ruling did not apply to situations in which "Congress replaces a statute of limitations with a shorter one that, if applied to a claim filed after the statute becomes effective, cuts off a plaintiff's right to sue without providing him an opportunity to comply with the new period," such a situation is not present in this case. 49 F.3d

The Eleventh Circuit adopted the Fifth Circuit's reasoning from *Vernon* in *Browning v. AT&T Paradyne*, 120 F.3d 222, 225 (11th Cir. 1997). In retroactively applying a shorter statute of limitations that barred plaintiff's age discrimination claim, the Eleventh Circuit dismissed the plaintiff's argument that the new limitations period was "a substantive restriction on the right rather than a procedural limitation on the remedy." 120 F.3d at 225. The Eleventh Circuit concluded that the shorter "limitations period is a procedural rather than a substantive requirement." 120 F.3d at 225. Therefore, contrary to Huff's assertions in this case, the retroactive application of SLUSA's limitations period does not impair Huff's substantive rights. As Judge Harmon concluded in *Enron*, "SLUSA exemplifies a rule of procedure that regulates secondary conduct rather than primary conduct." Slip Op. at 22.

### V. Conclusion

Based on the above analysis, this court concludes that SLUSA applies retroactively to actions filed subsequent to enactment based on pre-enactment conduct. Therefore, this court has jurisdiction over Huff's claims and Plaintiff's Motion to Remand will be denied by separate order.

Having determined that SLUSA applies to give federal jurisidiction to this court and that the Motion to Remand should be denied, the court next examines the effect of SLUSA on plaintiff's state law causes of action. Section 78bb(f)(1) states that "[n]o covered class action

---

at 889 n.1. Huff filed this action almost nine months after SLUSA's enactment and certainly had an opportunity, however short, to file a federal securities fraud class action within SLUSA's applicable statute of limitations. However, this court does not reach the question of whether some or all of Huff's claims, if re-pled under federal law, would be time-barred under SLUSA. The court grants Huff leave to amend its Second Amended Complaint to assert such claims, but does not assess the potential validity of these claims.

based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." Because this provision clearly mandates the dismissal of the numerous state law claims alleged by Huff in its Second Amended Complaint, this case will be dismissed without prejudice by separate order. Plaintiff will be given leave to amend its Second Amended Complaint to assert any applicable federal claims it may have under SLUSA.

DONE and ORDERED this 22d day of October, 2002.

Karon O. Bowdre
United States District Judge